```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION
   _____
 3                                        )
   GULF HAULAGE HEAVY LIFT CO.,           )
 4          Petitioner,                   )
                                          ) CIVIL ACTION NO.
 5   VS.                                  ) 4:18-CV-4392
                                          )
 6   SWANBERG INTERNATIONAL, LTD.,        ) 10:59 A.M.
            Respondent.                   )
 7   _____)

 8                        MOTION HEARING
           BEFORE THE HONORABLE ALFRED H. BENNETT
 9                      APRIL 26, 2019

10   APPEARANCES:
     FOR PETITIONER:
11   MR. DENTON PATRICK NICHOLS
     MS. LENA SERHAN
12   Norton Rose Fulbright US LLP
     1301 McKinney, Suite 5100
13   Houston, Texas  77010
     (713)651-8304
14
     FOR RESPONDENT:
15   MR. CHRISTOPHER "KIT" LYNN ASHBY
     MS. LESLIE GARCIA ASHBY
16   Ashby LLP
     1010 Lamar, Suite 1200
17   Houston, Texas  77002
     (713)739-1100
18
     MR. BRIAN EDWARD DAVIS
19   Crinion Davis & Richardson LLP
     707 North Walnut Avenue, Suite 201
20   New Braunfels, Texas  78130
     (210)568-7771
21
     COURT REPORTER:
22   Heather Alcaraz, CSR, FCRR, RMR
     Official Court Reporter
23   515 Rusk, Suite 8004
     Houston, Texas  77002
24   (713)250-5584

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

THE COURT:  Cause No. 4:18-cv-4392, Gulf Haulage Heavy Lift Co. versus Swanberg International.  Counsel, please announce your appearances for the record.

MR. NICHOLS:  Denton Nichols of Norton Rose Fulbright for petitioner, Gulf Haulage Heavy Lift Co., and I'm joined here by my colleague from the firm, Lena Serhan, also for petitioner.

THE COURT:  Your last name?

MS. SERHAN:  Serhan.

THE COURT:  Spell it.

MS. SERHAN:  S-E-R-H-A-N.

THE COURT:  Very well.  Thank you.

MR. ASHBY:  Kit Ashby with Ashby LLP for respondent, Swanberg.

MR. DAVIS:  Brian Davis with Crinion Davis & Richardson, also for respondent, Swanberg.

MS. ASHBY:  Leslie Garcia Ashby with Ashby LLP also for the respondent, Swanberg.

THE COURT:  Very well.  Thank you, Counsel.

We're here for a motion hearing, the motion for entry of order confirming the arbitration award and judgment, the motion to modify petitioner's motion pursuant to 9 U.S.C. Section 6 and 20- -- 208, and the opposed motion to vacate; is that correct?

MR. NICHOLS:  I believe so, Your Honor, although I would submit to the Court that the second motion that Your Honor

referred to, the motion to modify the scheduling order, may well be moot at this point.

        **THE COURT:**  Very well.

        **MR. ASHBY:**  We agree, Your Honor.

        **THE COURT:**  The motion for entry was filed first, so we'll start there.

        **MR. NICHOLS:**  Thank you, Your Honor.

        Your Honor, we appear again before you after the last initial conference we had in front of Your Honor on March 1st of this year.  The procedural posture of this case is substantially the same as it was then.

        As Your Honor noted at the outset, there are two competing motions in front of the Court, one to confirm the arbitral award that was entered and binds the parties here in Saudi Arabia, and a second motion by Swanberg to vacate that same award.

        At the outset, I would like to give the Court a bit of an overview of the New York Convention and the standard by which it will be judging this case here today.  The Convention, in Chapter 2 of the Federal Arbitration Act, which implements the Convention, mandates an expeditious and summary procedure to confirm for arbitral awards.  The Convention has been entered into by, I believe, over, now, 170 countries, including, of course, the United States and Saudi Arabia.

        And the Convention provides for a rather unique

1    framework for considering these types of applications, and it's

2    explained by the Fifth Circuit and other courts of appeals.

3    There are basically two types of jurisdictions recognized under

4    the Convention.  The first are the courts of primary

5    jurisdiction, which are the courts that sit in the same state or

6    jurisdiction where the arbitration award was rendered, and, of

7    course, that is, in this case, Saudi Arabia.

11:02:56  8    Then you have the courts of secondary jurisdiction.

9    Those are the courts who are sought to enforce the award in a

10    foreign country where that award was rendered in a country of

11    primary jurisdiction, and, of course, this court is a court of

12    secondary jurisdiction for purposes of today's application.

11:03:19  13    The terms of the treaty are a matter of United States

14    public policy and a matter of treaty obligation.  For that

15    reason, the discretion of this Court is extraordinarily limited,

16    and the review that this Court may conduct is also

17    extraordinarily limited.

11:03:37  18    Let me just start with what is undisputed here.  The

19    case -- it is undisputed in this case that this application

20    properly falls under the Convention.  In fact, I believe

21    Swanberg, in its answer, has admitted all of the facts that this

22    Court would need to determine, for instance, that the award was

23    rendered in one signatory country to the Convention, and it --

24    enforcement is being sought in another signatory of the

25    Convention, and that the arbitration producing the award arose

out of a commercial dispute.

All those facts have been admitted, and that is the only burden that GHHL has before the Court today. It's the only burden we need to discharge, and we could just sit down, and this Court -- and we'll go through what Swanberg says, but we have met our burden to have this award confirmed.

Conversely, as Your Honor knows, there is a motion by Swanberg to vacate the award. To be clear, under the framework of the Convention, this Court has no jurisdiction to vacate the award, to modify the award or to correct the award --

**THE COURT:** No discretion or limited discretion?

**MR. NICHOLS:** In reality, Your Honor, zero discretion because there is no jurisdiction because under the framework of the New York Convention, as I mentioned at the top of this discussion, there are courts of primary jurisdiction, who can hear the full panoply of potential objections under their nation's respective laws to recognition and enforcement and confirmation of an award, and only those courts are permitted to vacate an arbitration award.

Conversely, where the New York Convention controls, as it does here, the courts of secondary jurisdiction have only one decision to make, and that's whether or not to confirm the award. And according to Section 207 of the Federal Arbitration Act, this Court shall confirm the award unless the party opposing the award proves one of the grounds specified in the

Convention for refusing enforcement.

I paraphrased that slightly, but I believe I represented to the Court accurately those key terms.

So this Court, in fact -- and I stand by it -- has no jurisdiction to vacate, and that right there means that this Court can summarily deny the motion to vacate that has been proposed by Swanberg.

Now, that leaves only one issue before this Court, which is whether or not to confirm the award, which means, basically, is this Court going to recognize and enforce that award and give it the effects of the judgment of this Court?

Swanberg has raised a number of purported grounds in its motion, which it also styles, in the alternative, as an opposition to our motion to confirm, but I don't believe it would be entirely unfair for us to characterize those grounds as being frivolous, and we'll just take them one by one.

To start, Swanberg has alleged to this Court and represented to this Court that the award before it is on appeal in Saudi Arabia. To be very clear, there was only one appeal of that award. This award was rendered in April of 2017.

I understand that Swanberg filed its application to set aside the award in Saudi Arabia in either November or December of that year. That award -- excuse me. That proceeding was decided definitively against Swanberg in early 2018, and it was terminated, and that's even before we initiated

1    an application in this court to confirm the award.

11:07:37 2        When we initiated our application in this court to

3    confirm the award, there were no proceedings pending in

4    Saudi Arabia, but what happened is after we served Swanberg with

5    the petition, Swanberg went back to its Saudi counsel and sought

6    to file another proceeding in Saudi Arabia, not to appeal the

7    award, not to challenge it, not to set it aside, as it claims,

8    but, rather, to initiate a new arbitration.

11:08:04 9        And fortunately, Your Honor, the Saudi court saw

10    through what Swanberg was trying to do, which was to disrupt the

11    potential enforcement of this award in the United States, and it

12    has already disposed of Swanberg's petition and denied it.  So I

13    don't believe there's going to be any question that this award

14    is final and binding and conclusive on the parties in Saudi

15    Arabia.  So that potential ground for refusing confirmation is

16    off the table.

11:08:3217        The next ground that Swanberg raises is that the

18    arbitrators were not appointed in accordance with the parties'

19    agreement and that the arbitration procedure, likewise, did not

20    accord with the parties' agreement.  This argument is, likewise,

21    entirely frivolous.  The operative arbitration agreement here is

22    the March 10th, 2016, arbitration agreement whereby Swanberg's

23    Saudi counsel and GHHL's Saudi -- Saudi counsel signed a

24    document called "Arbitration Agreement" setting forth the

25    precise terms under which they would arbitrate their dispute.

1   And there is no dispute in this case, none, Your Honor, that the

2   proceeding proceeded in accordance with that arbitration

3   agreement.

11:09:22   4          So what is the nature of Swanberg's challenge?

5   Effectively, they argued that a previous arbitration clause in

6   one of the commercial agreements was not complied with in

7   certain procedural respects.  But it's crucial to note,

8   Your Honor, that in the arbitration agreement, the one that they

9   actually signed at the outset of the arbitration which named all

10  the arbitrators and decided the procedure to be followed, they

11  specifically said that this document shall control over the

12  shareholders' agreement that contains the arbitration clause.

11:09:55   13         So even if there's any variance between the two

14  documents, it's the later May 10th, 2016, agreement that

15  controls.  And Swanberg's only argument to the --

11:10:08   16         **THE COURT:**  May -- May -- what was the date?

11:10:11   17         **MR. NICHOLS:**  It is a May 10, 2016, agreement,

18  according to my notes.

11:10:16   19         **THE COURT:**  May 10th?

11:10:18   20         **MR. NICHOLS:**  Yes, Your Honor.

11:10:19   21         **THE COURT:**  Okay.  Thank you.

11:10:22   22         **MR. NICHOLS:**  Swanberg's only argument for why this

23  Court should disregard that agreement is, effectively, that that

24  agreement is void, that a party's -- once they entered into an

25  arbitration clause, cannot vary the terms of their arbitration

1  agreement subsequently.  And, Your Honor, Swanberg has presented

2  no authority to this Court for that proposition, none, zero,

3  and, in fact, it would be contrary to basic contract principles

4  and basic arbitration principles that arbitration is a matter of

5  consent between the parties.

11:10:56  6  And Swanberg, very expressly and through its counsel,

7  consented to this arbitration and, indeed, proceeded through

8  this entire arbitration without raising any of the objections to

9  the procedure that it does so now before this Court.  Its -- its

10  argument on this point is frivolous.

11:11:15 11  Next, Swanberg has certain arguments relating to the

12  appointment of the arbitrator whom GHHL nominated to the panel.

13  Bear in mind, Your Honor, this was a three-party panel.

14  Swanberg nominated one arbitrator, GHHL nominated another

15  arbitrator, and the two arbitrators together selected the umpire

16  or sometimes called the chairman of the -- of the tribunal, and

17  that's how this -- that's how this panel was constituted.  And

18  then that constitution, as I mentioned, was confirmed in the

19  May 10, 2016, arbitration agreement.

11:11:56 20  The problem with all of Swanberg's arguments against

21  the appointment of GHHL's arbitrator, just as a threshold

22  matter, is that they are brought under -- they're brought under

23  no authority of the New York Convention.  As mentioned at the

24  outset, this Court has discretion to deny enforcement only if

25  Your Honor finds one of the grounds specified in the Convention

1   for denying enforcement.  And the alleged ground here is that

2   this arbitrator did not disclose a one-time representation of

3   one indirect shareholder of GHHL, which rendered that particular

4   arbitrator, according to Swanberg, evidently partial.

11:12:43  5       The problem with that argument is that it -- it is not

6   supported by any of the text of the New York Convention, and

7   evident partiality is definitively not a ground which a court in

8   a secondary jurisdiction may refuse enforcement of an

9   arbitration award.

11:13:04  10      Moreover, the relevant ground that they're moving

11  under, they say that is their hook for this argument, is in the

12  Convention, that they were unable to present their case, which

13  is one of the grounds recognized in the Convention.  And yet the

14  record of the arbitration, as memorialized in the arbitration

15  award, does not reflect in any way that Swanberg was unable to

16  present its case.

11:13:28  17      On the contrary, Swanberg and GHHL, for that matter,

18  submitted multiple grounds of pleadings, all of which were

19  admitted.  There's no indication that the arbitrators refused to

20  hear any evidence, and so Swanberg has been unable to connect

21  this purported ground with anything that actually happened in

22  the arbitration.  That is fatal to its claim that it was unable

23  to present its case, which is the only relevant protection that

24  Swanberg invokes with respect to this issue with the exception

25  of one other, which I'll deal with in a moment.

11:14:04 1      Moreover, Swanberg does not deny that it actually knew

2  of the circumstances that it now complains of during the

3  arbitration.  And case law is clear that if you know of an

4  objection to evident partiality of an arbitrator, and you sit on

5  it, under the FAA, if that were applicable here, you have waived

6  that objection.  And very clearly Swanberg has done so in this

7  case even if that objection had any foundation to begin with.

11:14:34 8      Also, I should mention that Swanberg has a public

9  policy argument, claims that it is against the public policy of

10  the United States for a party appointed arbitrator not to

11  disclose the circumstances at issue here.  The problem with that

12  proposition, Your Honor, is that they give this Court exactly

13  zero case law to support it.

11:14:53 14      It's very clear from the Fifth Circuit that only the

15  public policies that implicate the most basic notions of

16  justice -- morality and justice are to be considered, and

17  Swanberg has provided this Court with no authority that the

18  circumstances here would implicate such a U.S. policy.

11:15:18 19      As another ground that Swanberg uses to attack the

20  award, they complain about the work of a -- the

21  tribunal-appointed expert here called TEST group.  So for a

22  little background, the tribunal hired -- not -- not -- GHHL

23  didn't hire and Swanberg didn't hire, but the tribunal hired an

24  expert group to assess certain documentation in order to

25  determine certain claims in the arbitration.

11:15:51 1    And remember, the only relevant ground that Swanberg

2    invokes with respect to this appointment is that it was unable

3    to present its case.

11:16:00 4    And so what does Swanberg say?  Well, it says, first,

5    that the TEST group had a past business relationship with GHHL,

6    which I presume they're saying rendered it biased towards GHHL,

7    and, also, that this particular group did not give due

8    consideration to all the documents which Swanberg had asked this

9    tribunal-appointed expert to review.

11:16:27 10    The problem with this argument, again, is -- let's

11    remember what context we're in here.  We're under the New York

12    Convention, and the relevant ground here is whether or not

13    Swanberg was unable to present its case as a result of either of

14    these circumstances.  Again, the arbitration record does not

15    bear that out, but even if all their allegations were taken as

16    true, it still would not prove that Swanberg was unable to

17    present its case.

11:16:54 18    Swanberg, belatedly, makes another argument -- which

19    is a bit outlandish, to say the least -- which is that before

20    the tribunal-appointed expert visited the site where GHHL has

21    its operations and where it had certain equipment that were at

22    issue in the arbitration, that GHHL disassembled this equipment

23    so that the TEST group, the tribunal-appointed expert, would see

24    it in a disassembled state and note that in its report and then,

25    after TEST group left, GHHL allegedly reassembled all this

1    equipment again.

2         Your Honor, this equipment -- these are 21 heavy duty

3    trucks that they're alleging were disassembled and then

4    reassembled.  There's a number of problems with this allegation.

5         To start with, it just doesn't make any sense.  TEST

6    group was not commissioned to assess the condition of the

7    equipment.  It was commissioned to determine whether certain

8    costs had been incurred by GHHL in maintenance of that equipment

9    and to determine whether any -- whether that equipment had been

10   used to -- on any jobs and any fees had been generated from it.

11   Neither -- TEST group explicitly relied on

12   documentation that was submitted by the parties to determine

13   those issues.  It did not rely on the condition of the

14   equipment.  Moreover, contrary to Swanberg's insinuation, TEST

15   group was not there to evaluate or to give an appraisal of the

16   value of this equipment.  And so why GHHL would go to the

17   trouble of disassembling 21 trucks doesn't make any sense, and,

18   moreover, it's been squarely denied by the affidavit of GHHL's

19   legal head and former general manager, Fahad Al Anazi.

20   So the -- the -- there are two problems -- there are

21   two types of problems here.  One are just the pure legal

22   problems with the argument, and in order to establish fraud as a

23   potential exception to enforcement under the Convention, you

24   have to show some nexus between the alleged fraudulent activity

25   in the arbitration and the decision of the arbitrators.

11:19:17 1    But in this case, the arbitrators vary explicitly

2    premised their award on the parties' pleadings, namely, their

3    decision to mutually rescind their agreements between them.  And

4    as a result of that, the arbitrators awarded relief that

5    reflected, effectively, that rescission.  Each party was

6    returned the consideration that it gave under the agreements.

7    The condition of the equipment was simply not relevant.

11:19:44 8    So there is no legal nexus between what they've

9    alleged and what the decision was based upon, but there's

10   another fundamental factual problem, which is that, as even

11   Swanberg acknowledges, it must show that there was a fraud by

12   clear and convincing evidence, at a minimum.

11:20:0313   But the only evidence that Swanberg has put forth to

14   show that GHHL allegedly undertook this pointless operation to

15   deceive the tribunal-appointed expert is the uncorroborated word

16   of a former GHHL employee who, Swanberg doesn't tell you, but we

17   do, was fired in September of 2018 for not following company

18   safety procedures, and who, subsequently, was hired by a

19   Swanberg affiliate in Saudi Arabia.

11:20:4020   Your Honor, this witness's testimony is hopelessly

21   compromised.  He, obviously, has an ax to grind, and it should

22   not be accepted as truthful.

11:20:5323   Next, Your Honor, I want to address, very briefly, a

24   matter that arose to our attention only last week, which is that

25   on Friday, which was the original date that this hearing was

1   originally set, Friday, April 19, Swanberg raised objections to

2   the affidavit of Fahad Alnazi [sic], who, as I mentioned, was

3   the legal head -- or is the legal head and former general

4   manager of the company.

11:21:19  5        Our affidavit has been on file, Your Honor, since

6   February 22nd of this year, and yet Swanberg only filed this

7   objection two months later and a week before this hearing, and,

8   in fact, on the day that this hearing was previous- --

9   previously scheduled to take place.  And we consider,

10  Your Honor, that the objections were filed clearly in

11  unreasonable time and are, therefore, waived.

11:21:43 12        But, moreover, the relief that Swanberg asks for in

13  the affi- -- in their objections, which is to strike that

14  affidavit, clearly cannot be granted.  First of all, there is no

15  motion to support that relief; second, the objections to the

16  isolated portions of the affidavit are, on their face,

17  unmeritorious; and, third, even if any isolated part of the

18  affidavit were inadmissible, it would not merit striking the

19  entire affidavit.

11:22:10 20        But the most important point, and to link it back to

21  the inquiry that this Court has, is that even if all of our

22  evidence were ignored and all of Swanberg's evidence, much of

23  which we've objected to, were admitted and taken at face value,

24  this Court could still not refuse to confirm the award on the

25  facts before it.

Swanberg, not GHHL, bears the burden of proof on all of these claims. We do not bear a burden to controvert those claims, and Swanberg has not brought forth proof to establish any valid recognized specified ground under the New York Convention for denying enforcement.

Finally, Your Honor, I'd just like to bring back to the Court's attention something we mentioned in our motion for confirmation, which is that we believe that this is a case that merits the award of attorneys' fees. Swanberg's evasive tactics in this case have been, in our view, obstructive, deeply inequitable and an abuse of the process.

And under these circumstances, the Fifth Circuit recognizes, along with other federal courts, that this Court has the inherent power and obligation, even, to award attorneys' fees where the opposition to confirmation of the award is without justification, just as it is here. And, therefore, in the Court's forthcoming order, we would respectfully request that it set a procedure to allow GHHL to make that claim for attorneys' fees.

And in closing, Your Honor, GHHL requests confirmation of the award and a judgment in the amount set forth in our petition, inclusive of prejudgment and post judgment interest, costs and attorneys' fees. And at this time I will take questions of the Court.

**THE COURT:** Thank you, Counsel.

MR. ASHBY: Thank you, Your Honor. I'm always worried when my opponent tells me what my argument is. I have to go back to the pleadings and look and determine that that is not my argument.

In short, first of all, the title of our document was a motion to vacate and, in the alternative, response. They titled their motion a motion to confirm. I think it was a motion to enforce. So out of abundance of caution -- but it's the same arguments.

Essentially, there are two undisputed --

THE COURT: Bring your mic a little bit closer to you.

MR. ASHBY: Sorry, Your Honor.

THE COURT: Thank you.

MR. ASHBY: Thank you.

There are two undisputed arguments or facts, one of which is actually admitted. The first is that one of the arbitrators was the then-legal representative of not just some stockholder, but the chairman of GHHL. If you look at the MOU, the shareholder agreement and asset purchase agreement, this individual signed all of them, and he's being referred to as the partner.

Now, he may not -- no longer be employed or may no longer be the representative, as the affidavit states, but back when they filed their appeal, which is included as Exhibit G, the counsel for GHHL at that point said, Our reply said that

1    arbitrator is a legal representative, current tense.  At that

2    time their argument was, Well, there's a difference between the

3    person and the entity.

4    They now classify it as trivial, but they don't tell

5    us what the matter was at the time.  It's all conclusory.  But

6    the un- -- what they said at the time, I advocate as a judicial

7    admission, that at the time of the arbitration, that arbitrator

8    was the legal representative of GHHL, and they don't dispute it

9    in their initial pleadings -- or the response.

10   Secondly, undisputed is that this fact was not

11   disclosed.  You have the declaration of Saeed.  He said, Had we

12   known it, we would have objected.  You can't object to what you

13   don't know.  So saying now, Well, you didn't say anything about

14   it, is a little twisted.

15   We can't object to what we don't know.  We didn't know

16   until after the fact, and the Saeed aff- -- declaration says

17   that.

18   Now, this Court is not a rubber stamp of other

19   countries' arbitrations.  Specifically, seven reasons are given

20   why judgments should not be enforced.  These two facts trigger

21   three of them.

22   The first is under V(1)(b), which is, essentially, the

23   due process, we've given you *Iran* -- excuse me, *Iran Aircraft*,

24   which tells you the fundamental requirement of due process is

25   the opportunity to be heard at a meaningful time in a meaningful

manner. And I'm -- *Karaha Bodas Company* tells you a fundamental

fair hearing is one that meets the minimal requirements of

fairness, adequate notice, a hearing on the evidence, and

impartial decision by the arbitrator.

Now, two things trigger this one. The first is there

was no impartiality. There was an arbitrator who was a lawyer

for the other side. Secondly, though counsel disputes it, the

arbitrators appointed TEST, who were charged with the two things

counsel says, one, to figure out the condition of the

evidence -- of the equipment, and then, second, to figure out

the revenue.

TEST, in their very own report, says that our counsel

attempted to provide evidence of those two issues. The first

were photographs of the equipment. These were photographs that

GHHL used on their website showing the condition of the

equipment, which was vastly different than it was on

December 2016.

And what I can only imagine is a defense in some

strange parallel universe, GHHL says, Well, these photographs

could have been manipulated for the purpose of deceit. These

were GHHL's photographs. Clearly, they had the originals, and

who else but GHHL would have manipulated them? But for that

reason, that evidence was not allowed. We were not allowed to

present our case to the arbitrator.

Secondly, they were supposed to determine the revenue

1  stream.  As you have from the affidavit of Mr. Newcomb and from

2  Saeed, when they do a job, when the new company does a job, they

3  will present a spreadsheet which will show which vehicles were

4  used and the amount charged.  Our attorney attempted to present

5  that to TEST.

11:28:16  6  GHHL's argument -- and this is all in the TEST

7  report -- says that, Well, that spreadsheet could have been

8  manipulated.  This was GHHL's spreadsheet.  They had it.  But

9  for that reason, that spreadsheet was not taken into evidence,

10  and they say repeatedly they would not consider those.

11:28:31  11  And at the end -- the last page of the last entry was

12  that TEST found no revenue because of no documentation.  Well,

13  because they wouldn't take our documentation.  Those two things

14  fall squarely within the first defense I mentioned.

11:28:47  15  The second one is under 5(1)(d), the public policy.

16  Now, counsel's right.  It's a narrow, narrow finding, but if a

17  fair hearing -- if due process doesn't fall in that exception,

18  nothing does.

11:29:06  19  **THE COURT:**  In regards to the appeal of the

20  arbitration which was undertaken, I assume that some of the

21  points that you're raising now were presented in that appeal

22  such that they could determine whether or not the original

23  arbitration award was valid.  Is that correct?

11:29:25  24  **MR. ASHBY:**  I believe the fact that the arbitrator was

25  biased was raised at the appeal.

THE COURT:  All right.

MR. ASHBY:  I don't know about that.  But even so,
sir, any finding by that company -- and, in fact, *Iran* speaks to
this.  This Court -- this Court alone rules on the seven
exceptions.  We don't cede that power to anybody else.  There is
no res judicata.  We don't say, Well, because you found that,
our hands are tied.

You and you alone get to decide the facts on those
seven elements.

THE COURT:  I understand that, but my question -- you
make the point and counsel made the point in his presentation
that some of these issues were alleged not to have been
presented to the arbitration panel.  And it may be true that it
was not originally presented, but I'm trying to inquire as to --
as to the appeal of the arbitration before that body there,
whether or not those issues were then presented such that they
had a full and fair consideration, if not in the original
proceeding, in the appeal proceeding.

MR. ASHBY:  The only evidence I have -- and that's the
records of those two -- of any issue being presented was that of
the biased arbitrator.  I don't know about the TEST report nor
of whether the arbitration occurred pursuant to the agreement,
which is our third.

THE COURT:  The other portion of it, that argument, I
think, that you asserted was that you were not allowed to

1    present your case.  Was that a issue that was presented in the

2    appeal as well?

11:31:04  3        MR. ASHBY:  Not like that, Your Honor.  I don't think

4    the same context.  It was more one of this arbitrator was

5    prejudiced; therefore, we did not get a fair hearing.

11:31:15  6        I don't think it was -- and I wasn't there,

7    Your Honor, but --

11:31:17  8        THE COURT:  And the specific point I'm asking about is

9    the presentation of certain evidence being excluded from the

10   original arbitration panel.  You mentioned the photographs and

11   things of that nature.  As part of the appeal, did you later go

12   back -- your client later go back and say, We were prevented

13   from presenting, originally, this pertinent evidence, which may

14   have altered the decision?

11:31:49 15        MR. ASHBY:  I don't recall reading that in the

16   documents that we have been presented.  I have not specifically

17   inquired of that.  I certainly can, if Your Honor's interested.

11:31:58 18        THE COURT:  No.  Very well.  Very well.  You may

19   continue.

11:32:00 20        MR. ASHBY:  Thank you, Your Honor.

11:32:01 21        The Fifth Circuit has found that one reason for which

22   public policy would be appropriate, as far as not enforcing it,

23   would be fraud.

11:32:13 24        Hope I can find my notes.

11:32:17 25        Specifically, the Fifth Circuit says -- has recognized

that fraud requires a showing of bad faith during the

arbitration proceeding, such as undisclosed bias of an

arbitrator or willfully destroying or withholding evidence.  You

don't have one affidavit, Your Honor, you have three.

11:32:34    And the question that I can never figure out, at least

initially, is:  Why was equipment that was delivered and used

and working suddenly found in complete disrepair when TEST

showed up?  We have the affidavits from people who drove them,

from people who worked with them, and they tell us that they

were in working order when they were delivered.  Then, in

December 2016, they were disassembled.  Then they were

subsequently reassembled and were put back into commission.

11:32:58    You have the affidavit from an attorney, who doesn't

tell you that he has any basis for any of the things he says,

whether he knows it works or not.  You have no evidence that

refutes the fact that these trucks were being used, then

disassembled.  The TEST reports -- reports shows -- or reports

that the trucks were inoperable, and then, we believe, they're

back in service.  That would fall under the willful destruction

of evidence.

11:33:20    And, finally, the third point, Your Honor, counsel

brought up that there was a subsequent agreement that says that

the arbitration will be pursuant to the terms of the Saudi law.

In fact, it even reflects the numbers and the specific --

specification of the Saudi law, and counsel's given us that in

both their Exhibit 4 and their Exhibit 5.  And those two say

that the arbitrator is to be unbiased, and if there is anything

that would give question to the impartiality of the arbitrator,

that must be disclosed.

It was not disclosed.  There was a biased arbitrator.

Swanberg did not get the arbitration that it agreed to.  For

that reason, that is a third reason.

Again, Your Honor, this Court is not a rubber stamp.

Frankly, Your Honor, they've already won.  They have all the

equipment.  They didn't pay for it.  They used the equipment for

years.  They have the money.

There is nothing else that can happen except that,

unless somehow this basic poor -- to be nice -- arbitration is

allowed to -- if they're allowed to pursue those remedies here.

Let me reverse it.

Could it possibly, possibly be proper to have an

arbitration before a biased arbitrator and allow that to be

enforced?  That can't be the law.

**THE COURT:**  And in regards to the public policy

argument, there has been ample precedent of not only the court

that I'm sitting in, but as well as the Fifth Circuit, other

circuits around the country and the United States Supreme Court.

There is a great deference to arbitration clauses and to

proceedings.

As you point out, there are certain instances where

1    those awards are not confirmed or even vacated or set aside.

2    But the default position is that arbitration is favored, and

3    when those -- when learned parties go into arbitration, the

4    results of those arbitrations are respected.

11:35:50  5         So starting at that default position, your argument is

6    to move the Court away from that based upon, I assume -- because

7    I've heard it now multiple times, your best argument is this

8    alleged biased arbitrator for which -- or it wasn't disclosed to

9    you.  Had it been disclosed, obviously, your position is your

10   client would object -- objected, and, secondly, that that

11   arbitrator contaminated the result of the proceeding such that

12   the result should not be confirmed or respected in this court.

11:36:41 13        Is that correct?

11:36:44 14        **MR. ASHBY:**  I believe that is correct, Your Honor.

11:36:45 15        **THE COURT:**  All right.

11:36:57 16        Counsel made another point, and you didn't address it,

17   and that was the award being on appeal.

11:37:05 18        **MR. ASHBY:**  Yes, Your Honor.

11:37:05 19        **THE COURT:**  And so is it correct to say that there is

20   an actual appeal of this underlying award at this time?

11:37:16 21        **MR. ASHBY:**  No, Your Honor.  There was at the time we

22   filed it.  Since we filed it and the hearing, that has been

23   resolved.  There is no longer an appeal on file in Saudi Arabia

24   of this matter.

11:37:26 25        **THE COURT:**  Very well.

11:37:48 1          Counsel made another argument on your behalf, that

2     being that the arbitration was not according to procedure.  Is

3     the underlying argument -- or your argument on that issue, is

4     that regarding the disclosure of the alleged bias of the

5     arbitrator appointed by GHHL?

11:38:11 6          MR. ASHBY:  Yes, Your Honor.

11:38:12 7          THE COURT:  All right.

11:38:12 8          And, finally, two other final points.  You would

9     concede that this is a court of secondary jurisdiction, not

10    primary jurisdiction, correct?

11:38:28 11         MR. ASHBY:  Yes, Your Honor.

11:38:29 12         THE COURT:  And, finally, counsel made a request that

13    attorneys' fees would be appropriate should they prevail.  You

14    did not address that, and I'll give you a moment to do so.

11:38:41 15         MR. ASHBY:  Thank you, Your Honor.

11:38:41 16         We do not believe attorneys' fees would be appropriate

17    in this basically because this was a flawed arbitration.

18    They're attempting to further perpetrate a -- a -- they used the

19    term "frivolous."  I won't use a -- let's say a very bad

20    arbitration on -- on -- upon us.  This was -- should never have

21    been brought.

11:38:59 22         They knew what was going on, and to bring it here

23    is -- does not -- should not grant them any attorneys' fees for

24    that.

11:39:04 25         THE COURT:  Very well.

11:39:05 1    Counsel, any brief response?  And I do mean brief.

11:39:10 2        **MR. NICHOLS:**  I'll keep it very brief.  Just one

3    thing.

11:39:12 4        **THE COURT:**  Okay.

11:39:12 5        **MR. NICHOLS:**  I think counsel has forgot Swanberg

6    brought this arbitration, not GHHL.  They committed themselves

7    to the terms of this arbitration through the May 10, 2016,

8    agreement, which included the appointment of the arbitrator

9    that's in dispute before this Court.  There is no judicial

10    admission before this Court that that arbitrator was a

11    representative of GHHL, of its parent companies, of its chairman

12    or anybody affiliated with GHHL at the time of the arbitration.

11:39:46 13        And if counsel can point this Court, kindly, to that

14    citation in the record, I would very much like to see that.

11:39:53 15        But, also, just -- just one more point on the

16    so-called three affidavits of fraud.  They have only one

17    affidavit -- one affidavit that supports -- or is supposed to

18    support this notion of fraud, the notion that this equipment was

19    disassembled and then reassembled, and that is the affidavit

20    that comes from the former employee.

11:40:16 21        The other two affidavits they refer to, nowhere in

22    those affidavits do they allege that GHHL disassembled the

23    equipment.  And if that is incorrect, then I'm sure counsel

24    would like to point out to the Court where that's incorrect, but

25    I submit that is not.

11:40:31  1          Your Honor, and finally, just on the point of
        2   equities, counsel insinuated that we've already won.  Far from
        3   the case, Your Honor.  If -- if this Court refuses confirmation,
        4   it means that we would be unable to recover the money that was
        5   paid by GHHL to purchase certain equipment from Swanberg.  That
        6   money, over $5 million, went to Swanberg in 2013, and it has had
        7   that money ever since then.

11:41:02  8          Conversely, GHHL has in its possession the equipment
        9   in Saudi Arabia that Swanberg is referring to.  What -- what I
       10   believe Swanberg's tactic in this case is to wait and gamble and
       11   see if this Court is going to refuse enforcement, which would
       12   make it much more difficult, to say the least, for GHHL to
       13   recover back its money, and yet Swanberg has not just an award,
       14   but a judgment in Saudi Arabia that -- under which they would be
       15   permitted to recover that equipment.

11:41:33 16          They could knock on the door of the -- GHHL the very
       17   next day after this Court were to decide to refuse confirmation
       18   and demand that equipment back, which means they keep the
       19   equipment, and they keep the money.  That is not fair,
       20   Your Honor.

11:41:47 21          If there's anymore questions for the Court, I'd be
       22   happy to address them.

11:41:50 23          **THE COURT:**  On the issue of the legal representation
       24   of -- counsel referred to him as the chairman.  You made the
       25   distinction that at the time of the arbitration, this

1 representation had ended.  Is it correct to say -- and you can,

2 obviously, correct me.  But is it correct to say that at some

3 point prior to the arbitration, in your view, that the appointed

4 arbitrator by GHHL had represented the chairman, whatever -- or

5 shareholder, whatever his position may have been, in a legal

6 matter, thus being his former attorney, and this person being

7 his former client?

11:42:44 8      **MR. NICHOLS:**  Your Honor, the only knowledge I have

9 with respect to that is what is contained in the affidavit of

10 Fahad Al Anazi, which acknowledges that there was a one-time

11 representation of this particular arbitrator of an indirect

12 shareholder.  I don't know if he was also the chairman --

11:43:02 13      **THE COURT:**  That's the second time you've used that

14 phrase "indirect shareholder."  What does that mean?

11:43:07 15      **MR. NICHOLS:**  GHHL, as I understand it, is owned by

16 two parent companies, two holding companies, and this individual

17 is a shareholder of one of those two companies.  That's how I

18 understand it.

11:43:18 19      **THE COURT:**  All right.

11:43:19 20      Two questions.  Do you know how long, prior to the

21 arbitration, this representation had ceased?

11:43:33 22      **MR. NICHOLS:**  So, Your Honor, I have to confess that

23 the affidavit does not say one way or the other when this

24 alleged representation -- well, there was representation, but

25 when it began or when it ended.  I don't know in -- temporally

1   speaking where in time it was.

11:43:47 2         And I just want to be clear with the Court.  I did not

3   say that it had ended before the arbitration.  I don't know when

4   that representation was in effect.

11:43:58 5       THE COURT:  So you don't know if the representation

6   was even ongoing at the time of the arbitration?

11:44:03 7           MR. NICHOLS:  No, I don't, Your Honor.

11:44:04 8       THE COURT:  So it's possible that it was ongoing at

9   the time of the arbitration?

11:44:08 10          MR. NICHOLS:  I don't know that, Your Honor.  I --

11:44:10 11      THE COURT:  You don't know if it's possible?

11:44:12 12          MR. NICHOLS:  Me, my personal knowledge -- GHHL may

13  well know that, but me, personally, I don't know that.  But I

14  would respectfully remind the Court that we don't bear the

15  burden of proof here.  Swanberg does, and it has not pointed

16  this Court to any evidence that this particular arbitrator was

17  representing a chairman or an indirect shareholder of GHHL at

18  the time of the arbitration.

11:44:33 19      THE COURT:  Well, in my consideration, it would be

20  important to know whether or not the representation was ongoing

21  at the time of the arbitration, or had it ended a month before,

22  six months before, or ten years before.  It seems, to me, that

23  if an arbitrator is sitting in an arbitration -- and I don't

24  know what the arbitrator knew, obviously, and nor would anyone

25  sitting here.

11:45:06 1      If he knew that one of the parties to that

2      arbitration, that his former or then-existing client was a

3      shareholder in that, that would seem, to me, to be important,

4      which leads me to my second question.

11:45:26 5      Counsel has stated that this representation was not

6      disclosed at the time of the appointment of the arbitrator to

7      that panel. Do you concede that that's correct?

11:45:41 8      **MR. NICHOLS:** I don't have evidence that that is

9      correct or incorrect.

11:45:44 10     **THE COURT:** Okay. Well, let me ask it another way.

11     In regards to this representation, do you have any information

12     that it was disclosed?

11:45:56 13     **MR. NICHOLS:** I do not.

11:45:57 14     **THE COURT:** Secondly, in regards to the appeal of the

15     arbitration, are you aware if that was raised, as counsel has

16     asserted, as part of the appeal?

11:46:23 17     **MR. NICHOLS:** I know that GHHL raised an objection to

18     the appointment of this arbitrator on substantially the same

19     ground that it does so here. It might be slightly different

20     legal grounds because, obviously, they were examining the issue

21     under Saudi arbitration law as opposed to the New York

22     Convention, but the same substantive circumstances were in front

23     of the Saudi appellate court.

11:46:46 24     **THE COURT:** Thank you, sir.

11:46:50 25     Your final word, if any?

11:46:52 1    **MR. ASHBY:**  I was just going to cite counsel to our

2    Exhibit G, page 3, subparagraph G, which their affiant says, "I

3    replied that said arbitrator is a legal representative, before

4    the honorable division, for Mr. Hussein Al-Anzani [sic] in

5    person."  That's a present tense during the appeal.

11:47:14 6    **THE COURT:**  So by way of making the point that it was

7    an ongoing representation, that's the evidence that is before

8    the Court?

11:47:21 9    **MR. ASHBY:**  Yes, Your Honor.

11:47:22 10    **THE COURT:**  Very well.  Anything else, sir?

11:47:24 11    **MR. ASHBY:**  No, Your Honor.

11:47:24 12    **THE COURT:**  Thank you, Counsel.  I appreciate your

13    fine oral presentations.

11:47:31 14    Counsel, anything else before we adjourn?

11:47:35 15    **MR. NICHOLS:**  Just, Your Honor, I hope you will keep

16    in mind the narrow grounds of the Convention, but that's all.

11:47:39 17    **THE COURT:**  You've made yourself clear on that point,

18    Counsel.

11:47:42 19    Counsel, anything else before we adjourn?

11:47:44 20    **MR. ASHBY:**  No, Your Honor.

11:47:45 21    **THE COURT:**  Very well.  Enjoy your weekend.  You're

22    excused.

11:47:47 23    **MR. ASHBY:**  Thank you, Your Honor.

11:47:48 24    *(Proceedings concluded at 11:47 a.m.)*

25                                    -o0o-

1    I certify that the foregoing is a correct transcript

2 from the record of proceedings in the above matter.

3

4 Date: May 2, 2019

5        /s/ *Heather Alcaraz*

         Signature of Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25